Please be seated. Your Honor, this is the third case in the morning called 213-1277. Merchant, et al., and the Statutory Committee of Penn v. the Regional Board of School Trustees of Lake County and the Woodland Community Consolidated School District, et al. On behalf of the appellant, Mr. Allen M. Mullins. On behalf of the appellee, Mr. James P. Barkley. Mr. Mullins. You may proceed. Thank you. May it please the Court. Good morning. Good morning. My name is Allen Mullins. I am representing the four defendant appellant school districts in this matter. This case involves a detachment petition whereby the Lancaster subdivision seeks to detach from School District 50, which is Woodland Schools, and annex to the Oak Grove Elementary School District, and also detach from Warren High School and attach an annex to School District 128 so they can attend Libertyville High School. What I would like to do today is discuss three of the findings of the Regional Board of Trustees and then also one of the findings they didn't make. The Regional Board held hearings over five nights and denied the petition. So the first finding I'd like to start with is the finding that there would not be, that granting the petition would not improve the educational welfare of the students, or to put it more commonly, that the students wouldn't get a better education if they went to the schools that they sought to go to. Petitioners rely on a comparison of the school report cards of the four schools. These are the Illinois State report cards. Woodland School District has 29% low socioeconomic students. Oak Grove School District has barely over 0%. They have 0.2% low socioeconomic students. Warren High School has 16% low socioeconomic students. Libertyville High School has 5% low socioeconomic students. Sections 10-17A of the school code provides that the state school report cards are to provide information, in part, where you can compare schools with similar student populations. One of the ways that the statute provides at determining whether the student populations are similar is the percentages of low socioeconomic students. Obviously, here, there's a wide disparity in the percentages of low socioeconomic students. So it was proper for the Regional Board of Trustees not to rely on the state report cards because, as stated in Section 10-17A, it's the policy of the state of Illinois that you should not use those state report cards to compare schools with dissimilar populations. If I heard you correctly, Libertyville has a higher percentage of low socioeconomic students? No, sir. What were the percentages again? It was for Warren High School, 16%, for Libertyville, 5%. So again, there's a wide variety, and it's the public policy of the state not to use the school report cards to compare schools with dissimilar student populations. But in addition to that, there were a number of educators that testified at the hearing. And three of those educators, including the petitioner's Dr. Brown, stated that you should not use the state report cards, again, to compare schools with dissimilar populations. The reason being because there's a series of studies that have shown that, for whatever reason, students with low socioeconomic status don't perform as well on standardized tests as students who aren't in the low socioeconomic status. So the witnesses, including the petitioner's own witness, all stated that you should not use the state report cards to compare the schools. But because of this, what the state report cards do is they report the percentages of students who meet or don't meet the state standards. So the children from Lancaster subdivision, none of them were identified as either being low socioeconomic or they were identified as not meeting state standards. So what the curriculum directors for Woodland and Oak Grove schools did is they were able to take out the scores of the low socioeconomic students for the two schools, mainly for, obviously, Woodland, and then compare what those scores would be for students who weren't low socioeconomic. For both schools over a four-year period, they were in the 90s. They were similar to each other, but they were in the 90s. They were in the upper 10%. Likewise, if you take a look at the state report cards, like I said, they report the percentage of those students who pass or don't pass the state standards. But there's another box in there that reports the average scores of the students who took the test. So when you take a look at Warrenville and you look at Libertyville, Warrenville's average score was 161, and the average score for Libertyville was 166. We're talking about a difference of five points, and we're not even on a scale of 100, but a greater scale of that. And then if you take into the fact that Warren had more students who didn't meet the state standards, obviously those students who did meet state standards, they scored pretty well in order to pick up those scores. So the point is, if you take a look at the averages, those schools are similar again. Those scores are just about the same. Didn't I read that because of the size of Warrenville that they're able to offer more courses? Yes. Than Libertyville, just due to the size? More courses, I'd say more extracurriculars. Basically, you have more students who are interested in it, so then it's financially feasible to offer either that course or that extra activity. That is correct. But what I'd like to point out, and what I think is the best evidence here of whether these students would get a better education at Oak Grove or Libertyville High School is the students themselves. At the time of the hearing, there were 15 Lancaster students that were attending Warren High School. Of those 15, nine were in the Advanced Placement Program. Now, the Advanced Placement Program is a program where students take— I thought the board ruled in your favor as to this issue. Yes. So did the trial court. Yes. So why don't we go to the things that the trial court ruled against you? Okay. Well, then, let me go to what I think is the more interesting—the travel times. The travel times and the reduction in the travel times to the petition for school, that is not part of the criteria in the school code. Sections 7-4 and 7-6 provide the criteria for granting a petition. Reduction in the travel times is not one of those criteria. Isn't this applied, though? Well, it comes from, I would say, the interpretation of the term in those sections of the educational welfare of the students. So it comes out of that. So in order to be a factor, it has to improve the educational welfare of the students. In our case, the regional board, again, considered the testimony regarding the travel times, the charts, and everything else. And the only thing they can conclude was that the driving or bus commute to Oak Grove School was measurably, their term, shorter. That was it. So, again, after all of the hearings, they could only determine it was only measurably shorter. And, most importantly, they could not conclude that it would be an educational benefit. And the reason that they could only come to that conclusion, that it was measurably shorter, is because the testimony was inconsistent. The petitioners put on evidence. They had charts. They had witnesses. And their witnesses testified that the travel time to the woodland schools, their current schools, was 7 1⁄2 to 19 minutes one way. Now, the school districts put on a witness who testified that the travel time to the woodland schools from Lancaster was 8 to 10 minutes. So we have a big diversity here. The most interesting thing is there were three witnesses that corroborated each other.  Well, he testified that the travel time from Lancaster to the woodland schools, and interestingly, his children had attended there for a number of years, and he said he drove them there half the time. He said that the travel time to the woodland schools was 7 1⁄2 to 10 minutes. Also, the petitioners witnessed Earth. She stated that the travel time to the woodland primary elementary campus, again, was 7 1⁄2 to 10 minutes. And then there was the school district's witness, Leonard, who testified that the travel time to the woodland schools was 8 to 10 minutes. Now, given that evidence in the record, oh, let me go back, then also there was evidence that the travel time from Lancaster to Oak Grove was 5 to 10 minutes. So given that evidence in the record, especially the three witnesses that corroborated each other, the finding from the regional board that the travel time to Oak Grove school was only measurably shorter is reasonable and is supported by the evidence in the record. Do we know what percentage of students are bused or what percentage have their parents driving? No, we don't. Not at all. So given that there's only, we'll say, a measurable difference in the travel times, the petitioners argue, and Justice McClaren, as you point out, the circuit court reached the assumption that the students would be safer traveling to Oak Grove school. They can't, that's not a reasonable assumption based on what's in the record. First I'd like to refer to is a number of cases where they did discuss that it was a safer trip to the petition for school. First one would be golf. In that case, there was evidence that the intersection that the students would cross to go to the current school had the highest accident rate in the area. In Avoca, there was evidence that the trip to the current schools, that there was an accident on that route once every three days. In Pocopian, now in Pocopian, they didn't really discuss the trip from the subdivision to the current schools, what the conditions were or whatever, but whatever those conditions were, they were enough that the court in Pocopian described that route as extremely onerous. I don't think we can say that based on what's in this case here. And instead, I would refer you to Marquardt. In Marquardt, there was a subdivision and the dividing line for the elementary and the high school districts went through that subdivision. In granting the petition, the regional board stated that, well, there's four sets of buses going through this school, this subdivision. If we grant the petition, there will only be two sets of buses, and that will be safer for the students. This court, the second district, overturned that decision. Now, again, in part, but part of the reason was the court said that, well, the regional board made the assumption it would be safer, but there's no evidence in the record that having school buses from four school districts is a safety issue. What it's saying is here. There's no evidence in the record that goes to the safety of traveling on either the route to Woodland Schools or to Oak Grove. All we know is we have three factors we know. The route to Oak Grove is shorter. As found by the regional board, the route to Oak Grove is only measurably shorter, and there are more traffic control devices on the route to the Woodland Schools. So the first thing I would say is we can't assume that the route to Oak Grove is safer just because it is shorter. And the reason is that we have no, again, no information that goes to the safety. We have no idea if it's one lane or two lanes. We don't know what the speed limit is. We don't know how many intersections, how many unregulated cross streets there are, what the truck traffic is like. But there's no information or no facts on which to base a reasonable assumption that it would be safer. The fact that the route to Oak Grove is shorter and that the route to the Woodland Schools has more traffic control devices alone is not a good enough reason to assume that the route to Oak Grove is safer. Here's why. If the route to Oak Grove is shorter, and the amount is in the record, but the driving time is only measurably shorter, that means there has to be something going on. There's some condition on that route that makes it a little more difficult to travel. And without knowing what that condition is, we can't assume that it's safer. That would just be making a leap of faith. Something is obviously going on in that road. We don't know what it is. And just to say it's safer because it's shorter is, again, just a leap of faith. Again, by itself being shorter doesn't mean it's safer. We've all driven someplace where we've taken the longer road to go someplace because we wanted to avoid something on the shorter route. And, again, we don't know anything about that shorter route. For all that it could be one lane versus two lanes, we don't know if they could have a faster speed limit, could have more trucks, could have more cross streets where cars are pulling out in front of you. And, again, there is nothing in the record on which to base an assumption. We don't know what's going on there. If you cut the travel time by 50%, is that sufficient to make this a positive factor weighing in favor of detachment? I would say no. And the reason I would say no is because the travel times aren't that long. We're not in, like, a downstate area where they're being bussed. It was a 20, they stated that the route to the current school was 20 to 50 minutes. We're nowhere near that. Let's take, even if we're at the worst, 19 minutes. That's not a real long bus ride. And that's at the worst. Again, if you take a look at the evidence, there are three witnesses that said it was 7 1⁄2 to 10 minutes to the Woodland Schools. The testimony was 5 to 10 to the Oak Grove School. At best, you might be saving a minute off. And I would suggest to you that it was not the intent of the legislature to grant a detachment petition for a savings of one minute. Now, you haven't even addressed yet the fact that the high school is further away. Would you say that that also applies there? If that is a further distance, well, that's not so much of a negative factor then. Well, I would say that. It's something to take into account. In fact, that was significantly farther as opposed to where we have a shorter distance for the elementary schools. Do you have any other questions? No. Sir, your time's up. You'll have a chance to make a vote. Okay, I'm sorry. Okay. Good morning. May it please the court. I'm happy to be here. My name is Jim Bartley, and I'm representing the Committee of Ten Petitioners in this case. As you already know, Judge Winter, in a very long 34-page decision, found that the decision of the regional board based upon their five findings of fact was clearly erroneous. It was clearly erroneous in really two ways. One, certain of their factual determinations were clearly against the manifest weight of the evidence, or they didn't consider factors that they should have considered. And two, they applied the clearly erroneous standard with regard to the issue of community of interest. If they didn't consider factors, should the trial judge have remanded it back to the board to consider those factors? No, I don't think that that was necessary. Of course, it was something that was possible, but I don't think it was necessary in this case because I think that the trial judge specifically concluded that based upon the findings of the regional board, the decision was clearly erroneous in law and in fact. The fact that the regional board made no finding on whether the increase in profit values, which was established, was an educational benefit, or whether they should have considered another factor, which escapes me right now as I'm standing here, is correct, but I don't think it's an aside. It's not essential to the trial court's reversal. Now, what I want to say here is it's really clear that the standard or the law is that when there is no educational benefit or financial benefit or detriment to any of the school districts involved, then the petition is to be granted if there is some educational benefit, some benefit to the welfare of the students. There was an initial comment made up front about educational welfare versus academics and the academic performance. Everybody knows that educational welfare is broadly determined within the case law. It includes the concept of closeness to school, community of interest with the surrounding body, the travel times, as well as other factors. You can see cases where a detachment has been granted solely so that the one student in the area can participate on the tennis team of the other school when one school had the tennis team and another school didn't. The point here is that educational benefit is broadly defined, and the obligation under the case law and the burden on us, the petitioners, all my committee of 10, was to present evidence to show that there was some educational benefit. Now, the question comes, what happened here? Well, the regional board finds that there was not a demonstratively strong community of interest for the students of the territory with the current students and schools and extracurricular activities of the Oak Grove and Libertyville schools. That's the error of law. The community of interest results in the benefit to participation. You don't have to try to prove, and of course you couldn't prove that if there's a community of interest but they're going to other schools, you can't put into evidence what kind of increase there is going to be. It flows naturally, and that's what the cases say. But clearly in Gulf, clearly in Carver and those other cases. So on the community of interest side, the finding, just as Judge Winter really pointed out clearly in her decision, is contrary to the law. She went further on the community of interest issue and said that a decision that there wasn't a community of interest would be clearly contrary to the manifest way of the evidence, and that is absolutely true. First of all, there were numerous witnesses all that testified that the community of interest was with Liberty, with the two school districts involved there. You have the geography, and this relates to the travel time. The maps are in there. The idea that the one school witness testified that he can drive from that subdivision, which you would go out onto Old Plain Road, over Interstate 94 to Route 21, I believe, turn west on 21, then go up north to those schools, which are in four different locations, located from eight to seven to eight miles away, having to go through four to eight traffic lights and drive it in eight minutes is unbelievable. It can't be so, not unless he was driving 60 miles an hour through all the traffic lights. That's just incredible. Our witnesses testified there is clear evidence in the record as to the fact the driving times are considerably longer. I want to go to the setup of the school, too, because this relates, too, along with this geography. If you look at the geography of the Lancaster subdivision, you'll see that the territory to be detached borders on the south, on the township line, right next to and adjacent to the Regency Woods subdivision, which is in the school that we proposed to annex to. So the subdivisions are connected. You'll also see in the record a joint park that those two subdivisions use called the Red Farm Park. That's in the record and on the maps. When you go out of the Lancaster subdivision, which is only one entrance into that subdivision from Old Plain Road, and by the way, the maps are all there that show the roads, the idea that there's nothing there as to what's safer is incredible, too. Not to mention the fact that a number of our witnesses testified, and I believe the record will bear this out, and I am sure I asked them the question, do you believe it's shorter, faster, and safer to drive to? And then to grow in their answers were, of course, yes, that's because it's obvious. But in any case, you turn out of that subdivision onto Old Plain Road, you drive two miles, go through one traffic light, and you go into the elementary school parking lot. That's a K-8 building with now only 800 and some students in it. It's under capacity at this point because the record shows that it was 200 and some students larger just a couple of years ago at the time that this group filed their first petition and it was denied because they said they didn't have space. In any case, there's no question of space now, and you get right into that school in essentially four to five minutes, I guess depending upon how long you have to stay at the traffic light. The high school, though, is farther away. One of them is and one of them is not. Libertyville is farther away. You add to that equation the fact that there's more high school kids that drive themselves, so you're going to be putting more kids on the road, right? And if they're further away, it detracts from their time period that they would have for extracurricular activities because it's taking them longer to travel. How do you address that? Well, I address it this way. First, there are two high schools with Warrenville. They have separate campuses. Only one of them is to any degree closer. The other one is approximately the same distance as Libertyville. You'll see that on the record. Second, as the trial court pointed out, it is the travel time and the concern for the elementary school students who are going to school for eight years and who are younger that is given more weight and is more important than the travel time for the older students going to high school. So I think that's adequately addressed in the trial court decision, but I also echo that, that that's clearly so. The primary concern with the transportation are the younger students. If you now look at the Woodland School setup, and the record is clear on this, they don't have one school building for K-8, as does Oak Grove. They have four different school buildings. If you look at the record, you will see that it's four different buses from Woodland that come into the Lancaster subdivision. The first one arrives at something like ten minutes to seven in the morning, and the last one picks up kids at 8-18. As one of our witnesses testified, and as it would be in my case, I had four boys two years apart, they have kids at different levels riding different buses. When those buses come home in the afternoon, they're spread at least an hour on their return. Whereas the Oak Grove bus, right now, goes into Regency Woods, picks up the students, and the record will show it then, proceeds down Oak Plain Road, almost to the Lancaster subdivision where there is one more house that's in their district, they pick up a student there, then they drive on down, go into the Lancaster subdivision, turn around the Oak Grove bus, and drive back to the Oak Grove school. That's what happens right now. Whereas in Woodland, you've got four buses leaving in the morning at four different times an hour apart. This comes to more than just the convenience of the parents. It comes to the educational benefit to the students. Now, the bus travel time is going to obviously be longer, and I believe the record clearly shows that there is at least three to five hours of difference in the travel times. We showed what the time for the bus from Oak Grove was, and they gave testimony, and I, you know, stranded the record, and he said, well, I don't know if these kids would be riding that bus, because that bus is full, so we might put them on the Nichols and Dimes bus, which is a bus that goes way over on the other side of town. Then it would take longer. But on cross-examination, he clearly admitted to me that bus routes are established each year, and those of us in the school business know that, and they're designed efficiently based upon where the students are and the routes. There is no logical way that a school district would set up a bus route as proposed there, and obviously they're going to use the same route down into Regency Park, picking up the kids, because they already go into the Lancaster subdivision with that bus. Using that bus, it's a ten-minute travel time on the bus, as measured and as in the record, whereas the Woodland buses are running anywhere from 20 to 40 minutes each way. Looking at that logically, and I believe the record will establish this, you're talking three to five hours every week for eight years of elementary school students, kindergarten through eighth grade. Multiply the hours, the time with the family, homework, just the convenience. Now, turning also to that distance, what about the parent participation in school and activities and the ease and the convenience and the likelihood? If I can drive out of my subdivision, go on one road and pull into the school parking lot in three, four, five minutes, am I more likely and am I going to go more often than if I have to drive eight to ten miles over the tollway, down the thing, over to the side? Now, this isn't that the parents aren't going to do it, or that they won't, or that the students won't participate in extracurriculars in the other school. They probably will. That's not the question. The question is, is it an educational benefit that this boundary be changed? And you have to ask yourself, if there's no harm, no detriment, either academically or fiscally to the school districts, and you've got this one subdivision connected to the other one, right near the elementary school, as opposed to going off to four different schools, would that not be some educational benefit meeting the standard of the Carver case, the Kokian case, and the Burnridge case? I believe it clearly is. We match with that the community of interest. We have the survey that was done, and it shows more than just the banking, commercial, and other interests. As the trial court pointed out, it shows the involvement of the kids in the kids' activities, which are overwhelmingly centered in Libertyville, in that context. Given that factor, the preference of the party, or the parents, also has to be taken into consideration. Because, as the case law says, once you have some educational benefit, the preference alone doesn't do it, but the preference is to be weighed. And in this case, you have unanimity from all 80 families in this subdivision. There was no contrary testimony. What I liked interestingly about the school's presentation was they did a points of interest chart up north and said, hey, you know, look, we have the same things up here. Libraries, you know, that kind of thing. Well, that's not the point at all. The point is, where do the people in that subdivision go? Is that my time? Thank you very much. The Burnridge case is also instructive. I believe the trial court is right and that there is clearly educational benefit here and that this petition should be granted. Thank you. Do you have any questions? Just a few points. I will try to make them brief. First of all, I would like to state, as Mr. Bartley discussed, the bus travel times and the witnesses who testified about that. I'd like to point out that one of the witnesses for the petitioners who testified about the bus travel times stated that the time she gave was the time when the students were picked up from the bus to the time they started class. But she had no idea what time that bus got to the school or what the students did after they got off the bus but before they got into the class. So I would suggest to you that that time is irrelevant. Next, I would like to address the statement that Mr. Bartley made that all they need is some educational benefit. That language comes from the Carver case and the Illinois Supreme Court case. But there are a couple of other cases, Oakdale and Goff, where the Supreme Court stated, and it's cited in just about every other case that deals with a detachment case, that the benefit to the annexing school and the detachment area has to clearly outweigh the detriment to the losing school district. What's the detriment here? Pardon? What's the detriment? In this case? Well, I'll be honest with you. On the losing school district, there's not a lot of detriment. It's not money. It's not going to be money. I would say losing some of these top-flight students. If we have some students in the AP program, you're going to be losing those, which might affect the ability to offer some of those AP classes, which would affect the other students at the school. Yeah, it would be pretty speculative, wouldn't it? Yes. But like I said, again, honestly, they're big schools. It's a lot of money. There's not a whole lot. But if you take Mr. Bartley's argument that all he needs is some evidence, which kind of sounds like any evidence, well, if you have just any evidence, that's not going to clearly outweigh any detriment. To me, clearly outweigh is you look at it, you know that's what it is. But the other thing, if you take the position that just any evidence is okay, well, then you risk an absurdity. Is just a shorter ride of one minute, is that okay? Is a shorter bus ride of a block okay? No, it's not. So I think you need not just any evidence, but you need something significant. Mr. Bartley mentioned Mr. Leonard's testimony regarding the route to the women's schools, and he told you how that, why that, you shouldn't believe in that. But he never discussed Mr. Dahl or Ms. Earth, who testified basically the same thing, the same times, as I stated earlier. He stated that, well, they can't introduce evidence of an increased participation in activities if the petition was granted. That's not true. If you look at some of the cases, there is evidence that the schools where the students wanted to go to, such as golf, was in the same park district that they belonged to. And the park district offered activities after school, but their students couldn't participate in those because they didn't go to that school, and by the time they got there, they were over. Pocopian, there's testimony that because of the 20 to 50 minute ride, some of the students couldn't participate in the after school activities. So there are ways to be able to state that my students can participate in these because of where we are, because of the length, and if we were to, if this petition was granted, we would do these things. Is it significant that the vast majority of the people living in the subdivision want this to happen? There are other cases where it seems like maybe it's 50-50 or 60-40 and it doesn't. There are, in other cases, some residents in the subdivision in question are ambivalent or would rather stay where they're at. I would say no, and the reason why is because that's not a criteria under the school code. School code sets forth the number of registered voters in the subdivision that have to sign the petition. If that was sufficient enough, they wouldn't have gone further and had the hearing, there wouldn't be the other criteria that has to be met. So the fact that there are that number of people who signed the petition, that's going to be a given. They can't get the petition before the regional board unless they have that support. So you're suggesting it's not relevant at all? No, because again, I haven't seen a case that said, well, because we have these many people who either testified or wanted to detach, we should consider that. No, I haven't seen that. Just one other thing. Justice Pence, you mentioned the distance to Libertyville High School. I would like to add, I think that is a factor because going to Oak Grove School, you have those elementary students, they're on a bus being driven by an adult. As you stated, going a further distance to Libertyville High School, you're going to have high school students driving cars. And I think I'd rather have an adult driving one bus than a number of high school districts on the road. In fact, I know I would. Thank you very much. Thank you. The case will be taken under advisement. If there are other cases on the call, there will be a short recess.